After a bench trial in the District Court, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor, fifth offense, in violation of G. L. c. 90, § 24 (1) (a ) (1).[2] On appeal, the defendant argues that (1) the evidence that he was under the influence of alcohol was insufficient to support the finding of guilt; and (2) the judge erred in admitting a statement he made during the booking process. We affirm.
1. Sufficiency of the evidence. To establish that the defendant was operating a motor vehicle while under the influence of alcohol, the Commonwealth was required to "prove that the defendant (1) physically operated a vehicle; (2) 'on a public way or place to which the public has a right of access; and (3) ... was impaired by the influence of intoxicating liquor' " (citation omitted). Commonwealth v. AdonSoto, 475 Mass. 497, 509 (2016). The defendant only challenges the third element, arguing that the evidence was insufficient because no witness actually observed the defendant driving in an unsafe or erratic manner. However, "the Commonwealth need not prove that the defendant actually drove in an unsafe or erratic manner." Commonwealth v. Connolly, 394 Mass. 169, 173 (1985). To the contrary, the Commonwealth's burden is to show that the defendant's ability to drive safely was diminished due to intoxication. Id. Viewing the evidence in the light most favorable to the Commonwealth and considering the inferences that permissibly can be drawn from it, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), there was sufficient evidence presented at trial of the defendant's diminished capacity to drive safely due to alcohol consumption.
The defendant's nephew testified that he saw the defendant pull into the driveway with his vehicle's hazard lights on and that the nephew had to turn them off for the defendant, who could not figure out how to do it himself. After the defendant got out of the car, the nephew saw him stumbling and unable to walk straight. He also observed him to have "slurred speech" and "glassy, bloodshot eyes." After the defendant returned to his car and drove off, the nephew called the police and reported his suspicion that the defendant was driving while intoxicated.
The arresting officer was able to stop the defendant's car shortly thereafter. As the defendant handed his identification to the officer, his foot depressed the accelerator pedal, causing the car to "rev at very high RPM." The officer had to instruct the defendant to remove his foot from the pedal. The officer noted the defendant's glassy and bloodshot eyes, his "thick" speech and the odor of alcohol emanating from his vehicle. When the defendant stepped out of the car, the officer additionally observed the defendant to be unsteady on his feet. The officer gave the defendant several opportunities to complete a field sobriety assessment ("the nine-step walk-and-turn test") but the defendant could not do so.
While the defendant offered competing explanations for all of his behavior, when viewed in the light most favorable to the Commonwealth, see Latimore, 378 Mass. at 676-677, this evidence was sufficient for a rational trier of fact to conclude that the defendant had a diminished capacity to operate a motor vehicle safely. See Commonwealth v. Jewett, 471 Mass. 624, 636 (2015) (describing "classic indicia of impairment").
2. Statement made at booking. The defendant also asserts error in the admission in evidence of a statement he made during the booking process at the police station, after his arrest but prior to receiving Miranda warnings. As no objection was raised at trial, we review only for whether any error caused a substantial risk of a miscarriage of justice. See Commonwealth v. Curtis, 417 Mass. 619, 623 (1994). At trial, portions of the video recording of the defendant's booking interview, including the portion containing the statement at issue, were played for the judge and entered in evidence. In the relevant exchange, the officer asked the defendant, "Any medical condition or anything I need to be made aware of?" In response to the officer's question, the defendant said, "No." The defendant contends that the statement contradicted his defense that he suffered from neuropathy in his feet which explained his poor performance on the field sobriety test. He argues that this "un-Mirandized statement prejudiced [his] case to the degree that he suffered a substantial risk of a miscarriage of justice."
The defendant's statement to the booking officer was properly admitted where, although the defendant was in custody at the police station, any questions posed to him were within the scope of the routine booking process. See Commonwealth v. White, 422 Mass. 487, 501 (1996) (routine background questions asked during booking that are "for record keeping purposes and related to police administrative concerns" fall outside scope of Miranda warnings); Commonwealth v. Woods, 419 Mass. 366, 373 (1995) (routine booking questions may be asked without Miranda warnings so long as they are not "designed to elicit incriminatory admissions"). In any event, we do not view the defendant's booking statement to have undermined his defense. In context, the officer's question appeared to relate to medical conditions which may affect the defendant's stay at the police station, such that custodial officers would need to be aware of them. Having no such conditions is not incompatible with having a medical condition that may impede the ability to perform a field sobriety assessment. We conclude that there was no error in the admission of the statement, and therefore no substantial risk of a miscarriage of justice.
Judgment affirmed.

The defendant was acquitted of operating a motor vehicle with a suspended license, receiving stolen property less than $ 250, operating an uninsured motor vehicle, and a number plate violation.